UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN REYNOLDS, individually,

    Plaintiff

v.

JEFF LARGEN, individually

and

JACOB MICHAEL BROOKS, individually,

    Defendants.

Case No. 1:25-cv-
Hon.:

| | |
|---|---|
| William F. Piper (P38636)<br>William F. Piper, P.L.C.<br>***Attorney for Plaintiff***<br>9848 Portage Rd.<br>Portage, MI 49002<br>Phone: 269.321.5008<br>Fax: 269.321.5009<br>Email: wpiper@wpiperlaw.com<br>legal@wpiperlaw.com | |

## **COMPLAINT**

The plaintiff Dawn Reynolds, by and through her attorney William F. Piper, PLC., for her complaint, states as follows:

### **JURISDICTIONAL ALLEGATIONS**

1. The plaintiff Dawn Reynolds is a woman who resided at 417 S. Main Street, Village of Lawton, County of Van Buren, State of Michigan, at all times relevant to this complaint.

2. The defendant Jeff Largen was at all times relevant to this complaint a police officer for the aforementioned Village of Lawton.

3. The defendant Jacob Michael Brooks is an individual who, upon information and belief, resided in the Village of Lawton, and, at the time of the incident involved in this complaint, was a "ride along" with the defendant officer Largen.

4. This lawsuit involves an unconstitutional entry and search of Ms. Reynolds' home and vehicle on June 12, 2025.

5. The defendants were acting during their entries and searches of the home and vehicle of Ms. Reynolds under color of state law but outside of their scope of lawful governmental authority.

6. This lawsuit arises in part under 42 USC § 1983.

7. This lawsuit arises in part under this court's supplemental jurisdiction to hear and decide state law claims arising out of the same transactions and occurrences as the federal law claims.

8. Jurisdiction arises under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## **COMMON ALLEGATIONS**

9. The plaintiff restates and realleges as though fully set forth herein paragraphs 1 through 8 of this complaint.

10. On June 10, 2025, Ms. Reynolds' son Don Prpich, Jr. was driving his mother's car on a suspended license south on M-40 in Lawton.

11. Mr. Prpich noticed the defendants' vehicle on the other side of the road with no lights on.

12. Mr. Prpich does not believe it was possible for the defendants to have noticed whether it was he or someone else driving the car at the time

13. Mr. Prpich then drove to his mother Dawn Reynolds' home.

14. Mr. Prpich exited his vehicle and entered his mother's home.

15. In the meantime, without ever turning on their overhead lights or any lights indicating their intention to effectuate an arrest, the defendants drove into Dawn Reynolds driveway and parked their vehicle.

16. The defendants approached the back door of Ms. Reynolds' home, whereupon the defendant Largen stated, "Donnie, I know you are in there," or words to that effect.

17. Without asking for permission or consent to enter Ms. Reynolds' home, the defendant Largen opened both the closed screen door and the closed interior door of the back door to Ms. Reynolds' home and entered her home, followed by the defendant Brooks.

18. The defendants walked through the kitchen and into the living room and told Mr. Prpich, in front of his mother, "You are under arrest."

19. The defendant Largen also said "Jacob saw you driving."

20. The defendants then handcuffed Mr. Prpich, took him outside, searched him, removed the license plate from Ms. Reynolds' vehicle that Mr. Prpich had been driving, and searched Ms. Reynolds' vehicle.

21. Ms. Reynolds' was shocked and horrified by witnessing the unconsented invasion of her home at night.

22. The defendants were not in "hot pursuit," as they did not begin the arrest process until after Mr. Prpich had entered his mother's home.

23. The defendants did not have any emergency justification to enter Ms. Reynolds' home, as no one was in danger or injured, and there was no evidence of a driving while license suspended charge that could have been found within the home.

24. After the defendants had taken Mr. Prpich outside, and after arresting him, the defendant Brooks then re-entered Ms. Reynolds' home.

25. The defendant Brooks did not ask Ms. Reynolds for permission or consent before entering Ms. Reynolds' home for the second time.

26. Shocked, outraged, and afraid, Ms. Reynolds said nothing to Mr. Brooks.

27. Mr. Brooks then told Ms. Reynolds "I got your license plate, it is on the porch," or words to that effect.

28. The defendant Brooks said "Does your dog bite?", and then he left the home.

29. As a result of the unconstitutional actions described above, Ms. Reynolds suffered and will continue to suffer shock, anger, outrage, fear, embarrassment, humiliation, emotional distress and other damages.

**COUNT I – FOURTH AMENDMENT VIOLATIONS – BOTH DEFENDANTS**

30. The plaintiff restates and realleges as though fully set forth herein paragraphs 1 through 29 of this complaint.

31. It is clearly established that a police officer cannot enter the home of a third party to arrest another without a search warrant and an arrest warrant, absent exigent or emergency circumstances.

32. It is clearly established in the Sixth Circuit since 2013, and in the United States since 2021, that a police officer cannot enter the home of a person suspected of a misdemeanor without an emergency justification or a warrant.

33. It is clearly established that a police officer cannot enter the home of a person who is fleeing, especially one suspected of a misdemeanor offense, based in the hot pursuit justification, unless the attempted arrest began outside of the home.

34. If there is no evidence associated with a vehicle regarding the reason for the arrest, after a person is arrested and cannot grab a weapon, it is also clearly established that a police officer cannot search a vehicle.

35. The defendants did not have an arrest warrant or a search warrant before they entered Ms. Reynolds' home.

36. It is clearly established that an officer must act to stop the violation of a citizen's constitutional rights committed in his presence by another officer.

37. The defendants could not reasonably have believed that they were acting within the constitutional limitations or the exercise of their authority under the Fourth and Fourteenth Amendments to the Constitution of the United States by acting as they did above.

38. As a result of the unconstitutional conduct of the defendants set forth above, Ms. Reynolds suffered and will continue to suffer the damages set forth above.

39. These claims are actionable under 42 U.S.C. § 1983.

WHEREFORE, the plaintiff requests a judgment against the defendants for whatever amount of money is sufficient to compensate her for her damages past and future, plus punitive damages, all recoverable interest, costs, attorney's fees under 42 U.S.C. § 1988, and whatever other relief this court deems fair and just.

## COUNT II – INTENTIONAL TORTS

40. The plaintiff restates and realleges as though fully set forth herein paragraphs 1 through 39 of this complaint.

41. The conduct of the defendants described above constitutes a trespass, a conversion, and a statutory conversion under MCL 600.2919(a).

42. As a result of the intentional torts described above the plaintiff has suffered and will continue to suffer the damages set forth above.

WHEREFORE, the plaintiff requests a judgment against the defendants for whatever amount of money is sufficient to compensate her for her damages past and future plus punitive

damages, all recoverable interest, costs, attorney's fees under 42 U.S.C. § 1988, and whatever other relief this court deems fair and just.

Dated: June 25, 2025

WILLIAM F. PIPER, PLC.
Attorney for Plaintiff

By:  */s/ William F. Piper*
William F. Piper (P38636)
BUSINESS ADDRESS:
9848 Portage Rd.
Portage, Michigan 49002
Phone: 269.321.5008
Fax: 269.321.5009